UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPHINE MILLER, :<br>    Plaintiff, : | CIVIL ACTION NO.<br>3:12-CV-01287 (VLB) |
| v. : | |
| : | |
| BRIDGEPORT BOARD OF EDUCATION :<br>and MARK ANASTASI, :<br>    Defendants. : | March 19, 2014 |

**MEMORANDUM OF DECISION DENYING DEFENDANTS' (SECOND) MOTION TO DISMISS [Dkt. #24]**

I.   Introduction and Factual Background

Plaintiff Josephine Miller ("Miller"), an African-American attorney licensed in Connecticut, brings this action for racial discrimination in the making and enforcement of contracts under 42 U.S.C § 1981 against Defendants Bridgeport Board of Education (the "Board") and Mark Anastasi ("Anastasi"), the City Attorney for the City of Bridgeport, in his official and individual capacities.

On November 30, 2012 the Defendants moved to dismiss the Plaintiff's complaint, and the Court granted the motion on July 30, 2013, allowing the Plaintiff leave to replead. Miller timely filed an Amended Complaint. The Defendants have again moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, alleging that the Plaintiff has not cured the deficiencies articulated in the Court's ruling on the first motion to dismiss. For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

1

II.  **Standard of Review**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility

**2**

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (MRK).

III.     Analysis

Plaintiff alleges two counts of discrimination in the making and enforcement of contracts under 42 U.S.C. § 1981. Defendants contend that Plaintiff's complaint must fail because she has again failed to plead particularized facts sufficient to establish that the Defendants engaged in any discriminatory conduct or had an intent to discriminate against her on the basis of race, or that the alleged discrimination concerned the making or enforcing of a contract cognizable under § 1981. Miller counters that she has added sufficient factual content to her complaint to meet the pleading standard.

a. Discrimination in the Making or Enforcement of Contracts

42 U.S.C. § 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  To successfully plead a § 1981 claim, a plaintiff must show: "(1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 41-42 (2d Cir. 2012) cert. denied, 133 S. Ct. 527 (2012) (quoting *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000)); *see also Morris v. Yale Univ. Sch. of Med.*, 477 F. Supp. 2d 450, 458 (D. Conn. 2007) (same).  Here, the Plaintiff has established the first element of her § 1981 claim as it is not disputed that she is a member of a racial minority.

"Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988); *see also Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982) (section 1981 can be violated only by purposeful discrimination).  "In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 717 (D. Conn. 2003) (AWT) (quoting same); *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp. 2d 592, 596 (S.D.N.Y. 2004) (same).  "[A] complaint consisting

4

of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)."  *Yusuf*, 35 F.3d at 713 (citing *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978)); *Timmons*, 283 F. Supp. at 717 (same); *Evans-Gadsden*, 332 F. Supp. 2d at 596.

As to the third element of Plaintiff's § 1981 claim, the statute prohibits intentional racial discrimination which affects "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Thus, any claim brought under § 1981 for discrimination in the making or enforcement of contracts "must initially identify an impaired contractual relationship . . . under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  "Absent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to somebody's contract.  [The Supreme Court has] never read the statute in this unbounded—or rather, peculiarly bounded—way."  *Id.*

The term "contract" pursuant to § 1981 adopts its ordinary common law meaning.  *Lauture,* 216 F.3d at 261 ("In drafting § 1981, Congress did not seek to promulgate some specialized federal definition of contract law, but merely intended the term 'contract' to have its ordinary meaning."); *see also U.S. v. Shabani,* 513 U.S. 10, 13 (1994) (upholding "settled principle of statutory

5

construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms"). Under Connecticut law, "in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties" whose identities are "reasonably certain." *Ubysz v. DiPietro*, 185 Conn. 47, 51, (Conn. 1981); *see also Bender v. Bender*, 292 Conn. 696, 728 (Conn. 2009) (substantially same). In other words, there must be a meeting of the minds: "the court must find that the parties' minds had truly met…if there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they did not themselves make." *Tsionis v. Martens*, 116 Conn. App. 568, 577 (Conn. App. Ct. 2009) (internal citations omitted).

A contract may be express or implied. *Janusauskas v. Fichman*, 264 Conn. 796, 804 (Conn. 2003). "An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Id.* at 573-74. A contract implied in fact is "founded upon a meeting of minds, which, although not embodied in an express contract is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Hercules Inc. v. U.S.*, 516 U.S. 417, 424 (1996) (quoting *Baltimore & Ohio R.R. Co v. U.S.*, 261 U.S. 592, 597 (1923)). An implied in fact contract arises "where a plaintiff, without being requested to do so, renders services under circumstances indicating that he

6

expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services." *Janusauskas*, 264 Conn. at 804-05.  "The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were."  *Auto Glass Exp., Inc. v. Hanover Ins. Co.*, 293 Conn. 218, 225 (Conn. 2009).  Silence may constitute assent to an offer of contract if an offeree, by his words or conduct, leads the offeror to reasonably interpret that silence as such.  *John J. Brennan Const. Corp. v. City of Shelton*, 187 Conn. 695, 710 (Conn. 1982).  "Whether such conduct took place so as to create a contract is a question of fact."  *Sandella v. Dick Corp.*, 53 Conn. App. 213, 220 (Conn. App. Ct. 1999) (quoting *John J. Brennan Construction Corp., Inc.*, 187 Conn. at 710).  Courts are reluctant to enforce implied contracts in the public sector, as doing so "would invite endless litigation on the basis of misinformation by employees, thereby drawing down the public fisc."  *Biello v. Town of Watertown*, 109 Conn. App. 572, 583 (Conn. App. Ct. 2008) (holding that representations by municipal employees not made in writing are of particularly little value in proving existence of implied contract).

      The Plaintiff has pled marginally sufficient additional facts to sustain her § 1981 claim.  Miller alleges that Mr. Cimmino, the Board of Education employee on whose behalf Miller alleges she has not been paid, originally "selected Attorney Matthew Hirsch, a Caucasian male, as his attorney" in that action because of an "acknowledged conflict of interest prohibiting his representation by the same attorney representing the Defendant Board of Education."  [Dkt. 23, Am. Compl.

7

¶¶6-7]. Cimmino was encouraged to select his own attorney because of this acknowledged conflict of interest, and Defendants permitted Hirsch to represent Cimmino "without further question." [*Id.* at ¶¶8, 41]. The Board of Education compensated Hirsch for his representation of Cimmino, paying him directly, and at no time required "Cimmino to first incur legal fees and expenses before he received reimbursement for said legal fees and expenses." [*Id.* at ¶¶9, 13-14].

In January 2010 Miller informed Anastasi of an "agreement between her and Cimmino to assume his defense in the federal court action," at Cimmino's request. [*Id.* at ¶¶16-17]. Miller inquired of Anastasi "what, if any, conditions existed regarding the city's payment for the legal services to be rendered by her on Cimmino's behalf." Anastasi "failed and refused to respond to Plaintiff's inquiry" and has since "made no effort to dissuade Plaintiff from assuming the duties pursuant to her agreement to represent Cimmino." [*Id.* at ¶¶18-20]. In February 2012 Miller entered an appearance on Cimmino's behalf and apprised Anastasi in writing. [*Id.* at ¶¶16, 22]. Miller alleges that Anastasi has also "refused to provide any information to Plaintiff regarding any scope of representation letters or letter agreements for attorneys who perform legal services for city employees under Conn. Gen. Stat. §7-101a." [*Id.* at ¶26]. Despite having submitted invoices for her representation of Cimmino, which Miller claims to be of the same type as that provided by Hirsch, the Board of Education has not paid her. [*Id.* at ¶¶30, 34].

Miller further alleges that Defendants have "no African-American attorneys who perform legal services for it [sic] pursuant to Conn. Gen. Stat. § 7-101a," as

8

demonstrated by the Board's records.  [*Id.* at ¶¶45-46].  Miller alleges that the Defendant Board of Education and Anastasi "maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services."  [*Id.* at ¶¶44].

The Plaintiff has by a very slim margin met the second prong of her § 1981 claim as she has specifically alleged that the Defendants unquestioningly allowed Cimmino to choose a Caucasian attorney – Hirsch – to represent him, and then paid him directly for his services, while the Defendants refused to acknowledge Cimmino's choice of Miller, an African-American attorney, or her representation of him, and have refused to pay her directly for her legal services.  These allegations, coupled with the alleged lack of any African-American attorneys providing services to the Board of Education pursuant to Conn. Gen. Stat. § 7-101a, and the absence of any reference by the Defendants to any public documents or regulations governing retention of or payment to private attorneys for services rendered, are marginally sufficient at the pleading stage to allege discrimination based on Miller's race.[1]

The Plaintiff has also marginally alleged that this discrimination has affected her right to make or enforce contracts.  Miller has specifically alleged that, despite that she has performed the same type of legal services as did Hirsch

---

[1] The Court notes that the Plaintiff has essentially admitted in the Proposed Second Amended Complaint attached as an exhibit to her pending Motion to Amend/Correct the Amended Complaint (dkt. 31) that she represents clients in lawsuits against the City of Bridgeport and therefore *may* have a conflict of interest which would justify the City's unwillingness to allow her to represent their employees.

and that both have specialties in employment law, the Board of Education unquestioningly allowed Hirsch to represent Cimmino and paid him directly for his services, but has refused to afford the same privilege to Miller.  The Plaintiff has successfully alleged that, while a Caucasian attorney was party to an implied or express contract to be paid directly for his legal services in representing Cimmino, the Board of Education has refused to extend to the Plaintiff this same contractual right to payment for legal services rendered.  She has also alleged that she reasonably relied on the Board's "unquestioning payment to Attorney Hirsch for his rendition of the same legal services to Cimmino" in interpreting Anastasi's silence as assent to payment for her legal services.  [Dkt. 23, Am. Compl. ¶25].  Lastly, Miller has alleged that Anastasi is the "chief legal officer for the City of Bridgeport and is authorized to approve or disapprove contracts for legal services between the City, its constituent agencies such as the Board of Education and members of the public."  [*Id*. at ¶3].  Thus, the Plaintiff has added sufficient factual content to marginally allege that her right to make a contract for payment with the Board of Education, or to enforce an implied contract for payment with the Board of Education, has been compromised.

      b.  <u>Municipal Liability</u>

Miller's claim for municipal liability also succeeds.  "[W]hen the defendant sued for discrimination under § 1981 or § 1983 is a municipality - or an individual sued in his official capacity - the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (internal citations omitted).

> **To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. A policy, custom, or practice may also be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.**

*Id.* **(internal citations and quotation marks omitted).**

**The Plaintiff has brought this action against Anastasi in his official capacity and against the Board of Education, both proxies for the City of Bridgeport itself. She has successfully alleged that the Board paid Hirsch, Cimmino's Caucasian attorney, for his representation of Cimmino while not paying Miller for substantially similar, if not identical, legal services, and has pled a bare-bones racial discrimination claim pursuant to 42 U.S.C. § 1981. Miller has also alleged that the Defendants have "no African-American attorneys who perform legal services for it [sic] pursuant to Conn. Gen. Stat. § 7-101a," as demonstrated by the Board's records, and that the Defendant Board of Education and Anastasi "maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services." Although scant, this additional factual content puts Plaintiff's Amended Complaint just above the pleading standard bar. Her municipal liability claim survives.**

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's 42 U.S.C. § 1981 claims for racial discrimination in the making or enforcement of contracts and municipal liability survive and the Defendants' Motion to Dismiss [Dkt. 23] is DENIED. The Court reminds the parties that the Scheduling Order articulated at docket entry 28 remains operative.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 19, 2014