**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPHINE SMALLS MILLER,<br>       *Plaintiff*,<br><br>       v.<br><br>BRIDGEPORT BOARD OF EDUCATION<br>and MARK ANASTASI,<br>       Defendants. | No. 3:12-cv-01287 (JAM) |

**RULING ON MOTION FOR SANCTIONS**

Rule 11 of the Federal Rules of Civil Procedure allows for the award of sanctions when a party pleads facts that she knows to be false. The plaintiff here—a *pro se* lawyer with more than 30 years of practice experience—has filed a discrimination complaint that is tainted by allegations that I conclude are false and that plaintiff knew to be false. These false allegations led to this Court's prior denial of defendants' motion to dismiss. I therefore grant the defendants' motion for Rule 11 sanctions, and I order that plaintiff's case be dismissed with prejudice, that plaintiff pay a penalty of $1,500 to the Clerk of Court, and that the Clerk of Court refer this matter to the Statewide Bar Counsel for any disciplinary review that it may deem appropriate.

**Background**

In July 2012, plaintiff Josephine Miller filed a *pro se* lawsuit in the Connecticut Superior Court against defendants Bridgeport Board of Education and Bridgeport City Attorney Mark Anastasi. Attorney Miller alleged that she is an African-American female who has been licensed as an attorney for 32 years. She further alleged that she was hired in February 2010 by Andrew Cimmino, a former employee of the Bridgeport Board of Education, to defend him against a

legal claim in a federal lawsuit. *See Lyddy et al. v. Bridgeport Board of Education, City of Bridgeport, and Andrew Cimmino*, 3:06cv1420 (WWE) (D. Conn. partially dismissed May 17, 2013). Cimmino did not have to pay for his legal fees because "[p]ursuant to Conn. Gen. Stat. § 7-101a [Cimmino] … was entitled to a defense and indemnity by the Bridgeport Board of Education." Doc. #1 at 5 (Complaint ¶ 5).[1] Defendant Anastasi was the chief legal officer for the City of Bridgeport, and he was authorized to approve or disapprove contracts for legal services pursuant to § 7-101a that were financed by the defendant Board of Education.

Attorney Miller further alleged that after she submitted several months of invoices for her legal services to the Board of Education, defendants failed and refused to pay her. In Attorney Miller's view, this failure to pay was because she is African-American. The complaint alleged that "[d]efendants have paid Caucasian attorneys for the legal services performed by them, unlike its refusal to pay for such services performed by Plaintiff," and that "[t]he conduct of Defendants has deprived Plaintiff of the same right to make and enforce contracts as is enjoyed by white citizens." Doc. #1 at 7 (Compl. ¶¶ 15-16).

Because the complaint alleged federal law claims for relief under 42 U.S.C. § 1981,[2] defendants removed the case to federal court and moved to dismiss the complaint for failure to state a claim. The case was initially assigned to the docket of Judge Vanessa L. Bryant, and

---

[1] Conn. Gen. Stat. § 7-101a provides in relevant part: "(a) Each municipality shall protect and save harmless any municipal officer . . . or any municipal employee, of such municipality from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such officer or such employee while acting in the discharge of his duties." Conn. Gen. Stat. § 7-101a(a); *see also Pitchell v. City of Hartford*, 247 Conn. 422, 430 (1999) (noting that § 7-101a "places a financial responsibility on the city to pay for damages, legal fees and costs arising out of the negligence of an employee").

[2] One of the nation's oldest civil rights statutes enacted just after the Civil War, 42 U.S.C. 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens," and it defines the term to "make and enforce contracts" broadly to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b); *see also CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

Judge Bryant granted defendants' motion to dismiss. *See Miller v. Bridgeport Bd. of Educ.*, 2013 WL 3936925 (D. Conn. July 30, 2013). Judge Bryant concluded that the complaint was insufficient to show that racial animus was the reason that defendants did not pay Attorney Miller's bills:

> Here, the Plaintiff has not pled facts sufficient to allege that her race was the reason motivating Defendants' conduct. She has alleged that Cimmino chose an attorney who Defendants paid for his services, and who Cimmino then chose to replace with the Plaintiff, who the Defendants have subsequently not paid. Although Plaintiff alleges that Anastasi did not inform her of any reason why she could not assume Cimmino's defense or any impediment to her providing him with legal services, she has failed to connect either Anastasi's alleged position or the Board's failure to pay her with any racially motivated intent. Instead, Plaintiff simply notes that the Defendants "have paid Caucasian attorneys" for legal services performed and also paid Cimmino's former attorney (whose race does not appear in the complaint) but have not paid her. Yet Plaintiff has not alleged that Anastasi or the Board hired or retained her to perform legal services on their behalf or promised to pay her for those services such that she would be similarly situated to Cimmino's former attorney or to the other unnamed Caucasian attorneys she cites without further reference, nor has she alleged that the Board was aware of any conversation that Anastasi allegedly had with the Plaintiff. Further, nowhere in the complaint does Plaintiff allege that either Anastasi (whose race Plaintiff fails to note) or the Board were aware of her race such that they could make decisions based upon it. Even had Plaintiff included the details of Cimmino's original attorney's race, the Court notes that the mere fact that this attorney was Caucasian and the Plaintiff is African American is insufficiently particularized to establish that race was a substantial factor in the Defendants' failure to pay her.

*Id.* at *4. "In sum," Judge Bryant concluded, "Plaintiff's failure to assert any particularized facts from which the Court could conclude that the Board's failure to compensate her was due to race and not a myriad of other reasons lacks facial plausibility pursuant to the pleading standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Ibid.*

Along similar lines, Judge Bryant also concluded that the complaint failed to allege a discriminatory municipal policy or custom as required for a municipal entity like the Bridgeport Board of Education to be held liable under 42 U.S.C. § 1981. *Id.* at *7.

3

Indeed, the only allegation in the complaint that could be remotely construed as relating to a municipal liability claim is that the Defendants "have paid Caucasian attorneys for the legal services performed by them, unlike [their] refusal to pay for such services performed by Plaintiff." *There is no allegation, though, that the City of Bridgeport or the Board acted pursuant to a policy, custom, or practice of racially discriminating against African Americans in the making or enforcement of contracts, or pursuant to a policy of not paying African American attorneys for their services.* Absent any such allegation, Plaintiff's municipal liability claim is dismissed.

*Ibid.* (emphasis added).

Judge Bryant granted Attorney Miller leave to file an amended complaint, and Attorney Miller followed with an amended complaint that expanded on her allegations. First, she alleged that the attorney who had previously represented Cimmino was a Caucasian male and that the defendants had paid him without problem or incident. Doc. #23 at 2-3 (Am. Compl. ¶¶ 6-14).  In addition and most significantly for present purposes, the amended complaint added the following three new paragraphs:

> 44.  Defendant Board of Education and Anastasi maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services.

> 45. Defendants have no African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7-101a.

> 46. Records of Defendant Board of Education show no African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7-101a.

*Id.* at 6 (Am. Compl. ¶¶ 44-46).[3]

 Defendants moved to dismiss the amended complaint. In opposing this motion, Attorney Miller emphasized as the first point in her argument the new allegations that she had made at

---

[3] Attorney Miller later moved to file a second amended complaint that contained these same allegations, as well as additional factual allegations and additional legal claims. Doc. #29. Judge Bryant granted in part and denied in part this motion, but Attorney Miller did not follow up by filing a second amended complaint. Doc. #33; *Miller v. Bridgeport Bd. of Educ.*, 2014 WL 1117810 (D. Conn. Mar. 19, 2014). Instead, she filed a separate federal court complaint that includes verbatim the same allegations of Paragraphs 44 through 46 that are at issue in this case. *See Miller v. Bridgeport Police Dept.*, 3:14-cv-00689 (JAM).

Paragraphs 44 and 45 of the amended complaint. She quoted both paragraphs and stated: "Contrary to Defendants' claims, Plaintiff makes specific allegations at paragraphs 44 and 45 regarding intentional discrimination based on race." Doc. #27 at 1.

Judge Bryant denied the motion to dismiss, concluding that "[t]he Plaintiff has pled *marginally sufficient* additional facts to sustain her § 1981 claim" and that "[t]he Plaintiff has *by a very slim margin* met the second prong of her § 1981 claim" to show race-based intent. *Miller v. Bridgeport Bd. of Educ.*, 2014 WL 1117790, at *4 (D. Conn. Mar. 19, 2014) (emphasis added). Judge Bryant determined that the new allegations concerning defendants' payments to Cimmino's prior Caucasian attorney, "coupled with the alleged lack of any African-American attorneys providing services to the Board of Education pursuant to Conn. Gen. Stat. § 7- 101a, and the absence of any reference by the Defendants to any public documents or regulations governing retention of or payment to private attorneys for services rendered, are *marginally sufficient* at the pleading stage to allege discrimination based on Miller's race." *Ibid.* (emphasis added). Judge Bryant also concluded that the new allegations were "marginally" adequate to show that defendants' conduct affected plaintiff's right to make or enforce contracts under 42 U.S.C. § 1981. *Id.* at 5.

Judge Bryant similarly relied on the new allegations of Paragraphs 44 to 46 of the amended complaint to conclude that plaintiff had alleged just barely enough to allow for a municipal liability claim:

> Miller has also alleged that the Defendants have "no African-American attorneys who perform legal services for it [sic] pursuant to Conn. Gen. Stat. § 7-101a," as demonstrated by the Board's records, and that the Defendant Board of Education and Anastasi "maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services." *Although scant, this additional factual content puts Plaintiff's Amended Complaint just above the pleading standard bar.* Her municipal liability claim survives.

*Ibid.* (emphasis added).

On March 19, 2014—the same day that Judge Bryant denied defendants' motion to dismiss—counsel for defendants advised Attorney Miller of defendants' intent to file a motion for Rule 11 sanctions on the ground that Attorney Miller knew or should have known that Paragraphs 44 to 46 of her amended complaint were untrue. Along with a draft of a proposed Rule 11 motion, defendants' counsel sent Attorney Miller a "safe harbor" letter pursuant to Fed. R. Civ. P. 11(c)(2) to permit her an opportunity to withdraw or correct the untrue allegations. Doc. #35, Exh. G.

> In response to this safe-harbor letter, Attorney Miller sent the following reply:
>
> This will respond to your correspondence regarding the above-captioned case. I do not intend to withdraw any pleading. Your attempt to engage in the characteristic economic terrorism is to no avail.

*Id.*, Exh. H.

True to her word, Attorney Miller did not withdraw or amend her pleadings. Defendants followed with the filing of this Rule 11 motion seeking to demonstrate that Attorney Miller knew there was no basis for her allegation that defendants do not engage African-American attorneys or law firms to furnish legal services. Most significantly, the Rule 11 motion included affidavits from two African-American attorneys—Errol Skyers and Michel Bayonne—who attested in detail that they are well known to Attorney Miller to furnish legal services for the Board of Education, including in recent cases in which Attorney Miller has been personally involved.

The affidavit of Attorney Skyers attested that he is an African-American attorney and employee of the Bridgeport City Attorney's office, that he has been the counsel of record for the Bridgeport Board of Education and its employees in nine matters during the course of his employment, and that he has known Attorney Miller professionally for at least ten years. Doc.

#35, Exh. J (Aff. Eroll Skyers ¶¶ 3-6, 19). Between March 2012 and October 2013, Attorney

Skyers represented the Board, its superintendent, and an employee in a case in which Attorney

Miller represented a plaintiff. *Id.* at ¶¶ 6-9. Over approximately 18 months, the two attorneys

corresponded and met in person "many times" in the course of their representation in that case.

*Id.* at ¶¶ 8-11. The case resulted in a five-day jury trial (including approximately three days of

jury selection and approximately two days of evidence presentation), during which Attorney

Miller represented a plaintiff and Attorney Skyers was the only counsel representing the

defendants.  *Id.* at ¶¶ 12-14. Between the jury verdict in October 2013, and dismissal of the

plaintiff's appeal in March 2014, Attorneys Skyers and Miller continued to represent their clients

and to communicate directly with one another as counsel. *Id.* at ¶ 18. Their communication

included post-trial motions, certified pleadings, other court documents, and an in-person oral

argument in January 2014. *Id.* at ¶¶ 16-18.

      The affidavit of Attorney Bayonne attested that he is an African-American attorney and

director of a law firm that has been retained by defendants as counsel of record to represent the

Board of Education and its employees on at least 29 occasions over the past seven years, and he

has known Attorney Miller professionally in this regard for approximately that entire period.

Doc. #35, Exh. K (Aff. Michel Bayonne ¶¶ 3-9, 24). Attorney Bayonne attested that he and

Attorney Miller actively litigated against one another in at least seven different matters, for

which Attorney Bayonne represented either the Board of Education or its employees and

Attorney Miller represented the plaintiffs. *Id.* at ¶¶ 7-9. During the course of their representation

in those cases, Attorneys Miller and Bayonne have had "a great deal of contact," including

"verbal conversations, written correspondence, depositions, court appearances, and trial." *Id.* at ¶

23. One of those cases involved a 20-day jury trial, during which Attorney Miller represented a

plaintiff and Attorney Bayonne co-represented the Bridgeport Board of Education and a former

Board employee. *Id.* at ¶¶ 8-15. Since the jury verdict and directed verdict in November 2012,

Attorneys Miller and Bayonne continued to communicate directly regarding post-trial motions

and an appeal. *Id.* at ¶¶ 16-17.[4]

Defendant Anastasi also submitted an affidavit attesting to the employment of Attorney

Skyers to represent the Bridgeport Board of Education and the retention of Attorney Bayonne for

this same purpose in many cases over the past several years. Doc. #35, Exh. L (Aff. Michael

Anastasi ¶¶ 5-9).  In further support of their Rule 11 motion, the defendants also included copies

of legal service billing records that had been furnished to Attorney Miller through FOIA requests

many months *prior* to her filing of the complaint in this case; these records show more than

$84,000 of billings by Attorney Bayonne for cases involving the Board of Education. Doc. #42 at

3 & Exh. A.

Attorney Miller filed a puzzling response to the Rule 11 motion. Doc. #37. Rather than

responding to the contentions that she made false factual allegations, Attorney Miller contended

that she was not similarly situated to Attorneys Skyers and Bayonne, because Attorney Skyers

was a city employee and because Attorney Bayonne belonged to a law firm that was non-

African-American. These contentions had nothing to do with whether her factual allegations

were false as alleged by defendants' Rule 11 motion.

With respect to her allegation in Paragraph 46 of the amended complaint that "[r]ecords

of Defendant Board of Education show no African-American attorneys who perform legal

services for it pursuant to Conn. Gen. Stat. § 7- 101a," Attorney Miller's response stated that she

had reviewed these records and had noticed Attorney Bayonne's name, but she contended that

---

[4] Attorney Bayonne's affidavit also noted that Attorney Miller had recently emailed him a copy of her proposed second amended complaint in this case with the note: "See if you are offended or outraged by this." *Id.* at ¶¶ 18-20.

"he was not listed as an attorney with whom direct legal contracts had been made with the Office of the City Attorney," and "[r]ather, he was listed as with the non-African-American law firm of Durant, Nichols, Houston, Hodgson & Cortese-Costa." Doc. #37, Exh. A (Josephine Smalls Miller Aff. ¶ 7).

Attorney Miller further argued that the presence of "token" numbers of African-American attorneys did not negate her claim of discrimination. She wrote that "[d]efendants are able to use photo-ops when [they] wish[] to provide a semblance of contracting for legal services with African-Americans," and that "[s]uch a crass display of tokenism is what courts have found in multiple contexts to be insufficient to negate a pattern and practice of racially discriminatory conduct." Doc. #37 at 9. She contended that "it is the Office of the Bridgeport City Attorney that has attempted to mislead the public by its token use of two African Americans in order to avoid full racially non-discriminatory treatment of attorneys." *Id.* at 11.

Attorney Miller's response did not otherwise reference or explain whether there was any factual basis for her claim in Paragraph 44 of the amended complaint that defendants "maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services." Nor did it address the basis for her claim in Paragraph 45 of the amended complaint that "[d]efendants have no African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7-101a."

In the meantime, in connection with my recent commencement as a judge in this District and the transfer of scores of cases from the dockets of other judges to mine, this case was among those transferred from Judge Bryant's docket to me on March 24, 2014. Doc. #34. I scheduled a discovery status conference with the parties on May 16, 2014, at which time I expressed concerns to Attorney Miller about the allegations made against her in the pending Rule 11

9

motion. Doc. #47 at 1 (Conference Memorandum and Order). I stated my initial impression from a review of the parties' papers that the allegations of Paragraphs 44 through 46 of the amended complaint were false and known to be false by Attorney Miller and also that these potentially false allegations had been significant to Judge Bryant's decision to deny defendants' motion to dismiss. *Id.* at 1-2.

I stated my intent to convene a hearing on the Rule 11 motion but noted that, because of the potential financial and professional/reputational consequences if I were to grant the Rule 11 motion and to conclude that Attorney Miller knowingly made false statements, I strongly recommended that she seek the advice and assistance of an independent attorney. *Id.* at 2. I made clear that I would grant Attorney Miller a continuance for the hearing were she to decide that she needed more time to prepare and/or to have the benefit of assistance from counsel. *Ibid.*

I further stated that if Attorney Miller wished to controvert any of the factual allegations set forth in defendants' Rule 11 affidavits, she should serve notice of her intent to do so such that Attorney Skyers, Attorney Bayonne, or other affiants could be called as witnesses at the Rule 11 hearing. *Id.* at 2-3. Attorney Miller did not advise of any intention to controvert the factual allegations of the affidavits attached to defendants' Rule 11 motion. Accordingly, I find all of the factual allegations and attachments of the Rule 11 affidavits of Attorney Skyers, Attorney Bayonne, Attorney Anastasi, and Attorney Edwards to be true. Docs. #35 & 42. I also accept as true the affidavit of Attorney Miller (Doc. #37, Exh. A), although I note that much of it is not responsive to whether the allegations set forth by her in Paragraphs 44 through 46 of the amended complaint were true. On June 10, 2014, I heard oral argument from Attorney Miller and counsel for the defendants on this motion, and this ruling now follows.

**Discussion**

Rule 11 of the Federal Rules of Civil Procedure provides, in part, that "[b]y presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b). After giving due notice and an opportunity to respond, a court may impose an "appropriate sanction" on a party that violates Rule 11's pleading requirements. Fed. R. Civ. P. 11(c)(1).

The Second Circuit has made clear that "[w]ith respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)). Moreover, proof of a violation of Rule 11 requires "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (emphasis omitted)).

The evidence before me shows beyond doubt that Attorney Miller knowingly made false statements of fact. Paragraph 44 of the amended complaint alleges that "[d]efendant Board of Education and Anastasi maintained a policy, practice, and custom of engaging only non-African-American attorneys and law firms to perform legal services." This statement is untrue, and I can only conclude that it was known to be untrue by Attorney Miller in light of her extended dealings with both Attorney Skyers and Attorney Bayonne. Moreover, apart from whether she subjectively knew the allegations to be false, I further find that, in light of the background facts

11

that were indisputably known to Attorney Miller at the time that she filed the amended

complaint, no objectively reasonable attorney would have made the allegations that she did in

Paragraph 44 of the amended complaint. It was objectively unreasonable for her to do so.

Similarly, Paragraph 45 of the amended complaint alleges that "[d]efendants have no

African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7-

101a." This statement is also untrue, and I conclude that Attorney Miller knew it to be untrue in

light of her extensive dealings with Attorney Skyers and Attorney Bayonne, as well as her

admission in Paragraph 7 of her affidavit that she had reviewed billing records showing services

performed by Attorney Bayonne. Moreover, apart from whether she subjectively knew this

statement to be false, I further find that, in light of the facts known to Attorney Miller at the time

that she filed the complaint, no objectively reasonable attorney would have made the allegations

that she did in Paragraph 45 of the amended complaint. Again, it was objectively unreasonable

for her to do so.[5]

In defense of her allegation in Paragraph 45, Attorney Miller contends that Attorney

Skyers does not count as an attorney "who perform[s] legal services for [the Board of Education]

pursuant to Conn. Gen. Stat. § 7-101a," because he is an *employee* of the City of Bridgeport

rather than an outside attorney that is independently contracted to provide the legal services for

which the city pays pursuant to the statute. The statute, however, admits of no such distinction

---

[5] In light of my findings concerning Paragraphs 44 and 45 of the amended complaint, I need not decide whether Paragraph 46 of the amended complaint—which states that "[r]ecords of Defendant Board of Education show no African-American attorneys who perform legal services for it pursuant to Conn. Gen. Stat. § 7- 101a"— was also knowingly untrue or objectively unreasonable. It is undisputed that Attorney Miller had previously requested and received records of the Board of Education that showed approximately $84,000 of billings by Attorney Bayonne. Doc. #42 at 5 & Exh. A. On the other hand, the records *themselves* do not denote the race of Attorney Bayonne (or the race of any of the billing attorneys). Accordingly, if Paragraph 46 is given a literal reading, one might say that the "records" themselves do not "show" that African-American attorneys were performing legal services. I do not think that Attorney Miller meant her allegation in Paragraph 46 to be understood in this literal sense (and she has not herself made this argument about how Paragraph 46 should be read), because if it were understood in this literal sense, it would do very little to advance her claim of discrimination. Nevertheless, I give her the benefit of the doubt and make no finding concerning the falsity of Paragraph 46.

between legal services for municipal employees that are rendered by attorneys who are municipal employees and attorneys who are outside counsel. The statute more broadly provides that municipalities shall protect and save harmless municipal officers and employees against financial loss and expense, including legal fees and costs, arising out of alleged wrongdoing during the discharge of their duties. *See* Conn. Gen. Stat. § 7-101a. The City of Bridgeport could comply with its obligations to individual employees under the statute either by furnishing a city employee attorney or by paying outside counsel to assume the representation.

In any event, even assuming such a distinction could be made or was intended between employee in-house attorneys like Attorney Skyers and outside counsel, Paragraph 45 was still knowingly untrue in light of the undisputed fact that Attorney Miller knew Attorney Bayonne to be outside counsel who regularly performed legal services for the Board of Education. To parry this conclusion, Attorney Miller contends that Attorney Bayonne's services are not within the scope of Paragraph 45 because Attorney Bayonne—though concededly African-American himself—works for a *non*-African-American law firm. But Paragraph 45 draws no such distinction between African-American attorneys and African-American law firms—it references only "attorneys who perform legal services."  More telling still, the preceding paragraph of the amended complaint (¶ 44) expressly references *both* attorneys and law firms (alleging a policy of "engaging only non-African-American attorneys and law firms"). This prior usage shows that Attorney Miller knew how to distinguish in her pleadings between individual attorneys and law firms.

Attorney Miller argues that she is not similarly situated to Attorney Skyers and Attorney Bayonne, such that their work for the Board of Education does not dispel an inference of discrimination. That argument misses the point. At this stage of considering a Rule 11 motion,

the inquiry is whether her pleadings were tainted with allegations that Attorney Miller knew to be false or that were objectively unreasonable in light of the predicate facts as known. Rule 11 is not an invitation to gamesmanship. It does not permit attorneys to make false statements of material fact and then, only if or when their falsity is exposed, to contend that they would prevail under the true facts that they concealed or did not plead in the first instance.

Nor can I conclude that the sweepingly false statements of Paragraphs 44 and 45 were inadvertent and not carefully chosen and considered by Attorney Miller. To the contrary, Attorney Miller inserted these allegations only after her prior complaint had failed to survive a motion to dismiss. She knew it to be necessary to add new allegations that would *plausibly* show not merely that she was a victim of a routine billing dispute but that she was a victim of no less than an entrenched and odious policy, practice, and custom of racial discrimination. And even after Attorney Miller added her sweeping (and false) claim that no African-American attorneys performed legal services for the defendants, Judge Bryant concluded that the amended complaint only marginally and barely sufficed to create an inference that the reason that Attorney Miller was not paid by the defendants was because of her race.

Retreating from her categorical claim that defendants do not engage *any* lawyers who are African-American, Attorney Miller's opposition to the Rule 11 motion contends that defendants engage only "token" numbers of African-American attorneys and no African-American-owned law firms. If so, then Attorney Miller should have alleged these very different facts in her complaint rather than her far broader claim that defendants engage no African-American attorneys at all. Attorney Miller must have understood that any inference of discrimination would be far less potent—or well-nigh non-existent at all—if she conceded (as she knew) that the defendants regularly engaged the services of at least two African-American attorneys.

14

Having concluded that Attorney Miller's allegations were false—and that they were knowingly and strategically and objectively unreasonably so—I must next consider what sanctions are appropriate. Rule 11 allows for a range of sanctions, all as "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(1) & (c)(4). As the Advisory Committee Notes makes clear, "[t]he court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11, advisory committee note to the 1993 Amendment.[6]

Deterrence is an important concern in this case not only because Attorney Miller continues to deny that her factual allegations were false, but she has also propagated her false statements in other litigation. On May 13, 2014, while the Rule 11 motion in this case was pending, Attorney Miller filed a separate lawsuit in this Court against the same defendants in this case (and others). *See Miller v. Bridgeport Police Dept. et al.*, 3:14-cv-00689 (JAM). Her complaint in that case repeated many of the factual allegations in this case—including the principal paragraphs that are the subject of this Rule 11 motion. *Id.*, Doc. #1 (Compl. ¶¶ 46-48). On June 9, 2014, the day before oral argument on the Rule 11 motion in the present case,

---

[6] The Advisory Committee Notes set forth many of the factors that a court should consider in determining an appropriate deterrent sanction:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11, advisory committee note to the 1993 Amendment.

Attorney Miller filed an amended complaint in that case, again repeating the false factual allegations upon which the instant Rule 11 motion is based. *Id.*, Doc. #7 (Am. Compl. ¶¶ 46-48).

I conclude that dismissal with prejudice of Attorney Miller's lawsuit is plainly the most appropriate sanction in this case. Dismissal of a complaint is among the permissible sanctions allowed under Rule 11. *See* Fed. R. Civ. P. 11, advisory committee note to 1993 Amendments (describing "the court's power to impose sanctions or remedial orders that may have collateral financial consequences upon a party, such as dismissal of a claim. . . ."); *Marina Management Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (noting that "[d]ismissal is a legitimate sanction under Rule 11 for serious misconduct when lesser sanctions would be ineffective or are unavailable") (citations omitted).

If Attorney Miller had not fabricated the allegations of Paragraphs 44 and 45, there is little likelihood that her suit would have survived defendants' motion to dismiss. Judge Bryant concluded that the amended complaint was just barely above the pleading bar to withstand dismissal. Had Attorney Miller conceded—as she knew—that at least two African-American attorneys perform legal services for the defendants, there is little reason to suppose that the allegations of discrimination against her would have been deemed plausible. Moreover, this is not a case where an order of dismissal would penalize an innocent client for the misconduct of her attorney; the attorney and client in this case are one and the same. The most appropriate sanction is one of dismissal that deprives Attorney Miller of the benefit that she wrongfully sought to achieve with her sweepingly false allegations of Paragraph 44 and 45 of the amended complaint. *See, e.g.*, *Jiminez v. Madison Area Technical College*, 321 F.3d 652, 656-57 (7th Cir. 2003) (affirming Rule 11 dismissal of discrimination suit based on falsified documents); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (affirming Rule 11 dismissal of Title VII

16

action "based on the district court's finding that manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct").[7]

Rule 11 also allows for the award for the award of a monetary penalty as appropriate to deter misconduct. I find that general and specific deterrence concerns warrant not only that Attorney Miller be barred from proceeding with this action but that she should also pay a monetary penalty. Others who would fabricate key factual allegations should know that they not only jeopardize their entire claim but also put themselves at financial risk. On the other hand, I understand that Attorney Miller is a solo practitioner and have nothing to indicate that she is possessed of great wealth or resources. I therefore conclude for deterrence reasons that a monetary penalty of $1,500 is appropriate in addition to the sanction of dismissal.

Defendants have also requested more than $21,450 of attorney's fees and costs, corresponding to all of their fees in this litigation since the filing of Attorney Miller's amended complaint. Doc. #52. In the context of this case, I decline this request because of defendants' delay in filing their Rule 11 motion. Rather than filing their motion at the earliest possible time, defendants instead filed their second motion to dismiss (without challenging the basis for Paragraphs 44 and 45 of the amended complaint). This allowed the litigation to continue, and it meant that the authority and resources of the Court were unnecessarily expended to consider and

---

[7] In the context of dismissals of cases for failure to prosecute, the Second Circuit has warned that "dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness," *Martens v. Thomanns*, 273 F.3d 159, 179 (2d Cir. 2001) (internal quotations omitted), and that "a district judge should employ [the remedy of dismissal] only when [it] is sure of the impotence of lesser sanctions." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 665 (2d Cir. 1980). I need not decide whether this dismissal-only-as-a-last-resort standard applies in the Rule 11 false-statement context, because I conclude that dismissal is by far the most appropriate remedy and that requiring Attorney Miller to pay only a monetary sanction would ineffectively serve the deterrent purpose of Rule 11 sanctions in this context. If, however, the remedy of dismissal were not available to me as a sanction, I would—in light of the necessary deterrent purposes of Rule 11 sanctions—wholly reconsider my decision to impose a monetary penalty limited to $1,500 and similarly reconsider my decision not to award attorney's fees. I would also consider and invite briefing on whether I have inherent or other authority to dismiss the complaint on grounds of the very troubling conduct at issue in this case. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

rule upon defendants' second motion to dismiss. A large portion of the fees that defendants request are for aspects of this litigation that would have been avoided if defendants had timely filed their Rule 11 motion. I do not find that defendants' delay was in bad faith, as I understand their reluctance to accuse Attorney Miller of ethical misconduct and their hope instead that Judge Bryant would simply grant the second motion to dismiss. But it was a mistaken choice, and the consequence is that defendants' request for attorney's fees is denied.

Rule 11 also allows for the Court to refer the misconduct of an attorney for consideration by disciplinary authorities. *See* Fed. R. Civ. P. 11, advisory committee note to the 1993 amendment (noting "possible sanctions" to include "referring the matter to disciplinary authorities"). The Connecticut Rules of Professional Conduct prohibit an attorney from knowingly making false statements of material fact to a court and from knowingly failing to correct a false statement when it comes to the attorney's attention that the statement is false. *See* Conn. R. Prof. Cond. 3.3(a)(1). That rule is implicated by Paragraphs 44 and 45 of the amended complaint and by Attorney Miller's failure to correct Paragraphs 44 and 45 of the amended complaint when advised of their falsity by defendants' safe-harbor letter. Attorney Miller's response to defendants' safe-harbor letter—to accuse defendants' counsel of engaging in economic terrorism—was itself an extraordinarily unprofessional act, made worse by the fact that the allegations of the safe-harbor letter were well warranted. *See* Conn. R. Prof. Cond. preamble (noting "lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system"). Similarly, the Rules prohibit an attorney from engaging in conduct that impedes the due administration of justice. *See* Conn. R. Prof. Cond. 8.4(4). Here, Attorney Miller's false allegations led to unnecessary expenditure of

the Court's resources to rule upon defendants' second motion to dismiss as well as to rule upon

the instant Rule 11 motion.

Every new attorney in Connecticut takes an oath for the privilege of admission to the bar,

and the focus of that oath, as set forth below, is to foreswear the kind of misconduct that infected

Attorney Miller's pleadings in this case:

> You solemnly swear . . . that you will do nothing dishonest, and will not
> knowingly allow anything dishonest to be done in court, and that you will inform
> the court of any dishonesty of which you have knowledge; that you will not
> knowingly maintain or assist in maintaining any action that is false or unlawful;
> that you will not obstruct any cause of action for personal gain or malice; but that
> you will exercise the office of attorney, in any court in which you may practice,
> according to the best of your learning and judgment, faithfully, to both your client
> and the court; so help you God or upon penalty of perjury.

To be sure, no attorney is the sum of his or her worst moments. And Attorney Miller has

had a long career in the practice of law, without apparent blemish so far as I know from the

documents before me. From what I can tell, Attorney Miller is fervently devoted to a noble

objective of redressing discrimination. But no fervor for one's case may justify false statement.

My hope is that with time Attorney Miller will appreciate the limits that truth and the rules of

professional conduct impose for all cases upon the zealous advocacy of counsel.

### Conclusion

Defendants' Motion for Sanctions [Doc. #35] is GRANTED as follows. The Clerk of

Court shall dismiss this case with prejudice. Attorney Miller shall pay a penalty of $1,500 to the

Clerk of Court within 90 days of the date of this order. The Clerk of Court shall forward a copy

of this ruling by certified mail to the Connecticut Statewide Bar Counsel, 287 Main St., Second

Floor, Suite #2, East Hartford, CT 06118, for whatever further disciplinary review or action it

deems appropriate.

Defendants' Motion for Attorney Fees Regarding Rule 11 Motion [Doc. #52] is DENIED

for the reasons stated in this opinion.

It is so ordered.

Dated at Bridgeport this 30th day of July 2014.


/s/_____
Jeffrey Alker Meyer
United States District Judge